UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICK WALTON,                     )
                                 )
        *Plaintiff*         )
                                 )
v.                               )      Docket No. 04-212-B-W
                                 )
JO ANNE B. BARNHART,             )
**Commissioner of Social Security,** )
                                 )
        *Defendant*         )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the issue whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from pulmonary disease, otitis media and epicondylitis, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had chronic obstructive pulmonary disease ("COPD"), chronic otitis media and epicondylitis – impairments that were severe but did not

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 2, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

meet or equal any listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 3, Record at 17; that he lacked the residual functional capacity ("RFC") to lift and carry more than twenty pounds occasionally or more than ten pounds on a regular basis; squat, kneel or crawl; climb ropes, ladders or scaffolds; perform constant, forceful pushing or pulling; work in extremes of heat or humidity; or work in concentrated exposure to fumes, dust or other respiratory irritants, Finding 5, *id.*; that his capacity for light work was not so compromised that he could not adjust to other work existing in significant numbers in the national economy, Finding 11, *id.*; and that he therefore had not been under a disability at any time through the date of decision, Finding 12, *id.*[2] The Appeals Council declined to review the decision, *id.* at 5-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the

---

[2] Inasmuch as the plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through at least December 31, 2004, *see* Finding 1, Record at 17, which was subsequent to the date of decision, *see id.* at 18, there was no need to undertake a separate SSD analysis.

commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff asserts that the administrative law judge erred in relying for his Step 5 finding on a vocational expert's answer to a hypothetical question that was not supported by the medical evidence of record. *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 6) at 1-3. He argues secondarily that the administrative law judge made a flawed credibility finding. *See id.* at 3-4. I find no reversible error.

## I. Discussion

The plaintiff's primary argument implicates several bedrock Social Security principles: that (i) at Step 5, the record must contain positive evidence in support of the commissioner's findings regarding a claimant's RFC, *see, e.g., Rosado*, 807 F.2d at 294, (ii) unless the sequelae of a claimant's impairments are obvious to a layperson as a matter of common sense, an administrative law judge is not qualified to determine RFC on the basis of the raw medical evidence but instead must look to a medical expert to do so, *see, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record"), and (iii) a flawed RFC transmitted to a vocational expert undermines the relevance of that expert's testimony *see, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.").

The plaintiff argues as follows:

1. The Record contains only one RFC assessment by a medical expert, who checked a box indicating, in relevant part, that as a result of COPD the plaintiff needed to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. *See* Statement of Errors at 2-3; Record at 173, 176 (RFC assessment dated September 15, 2003 by Lawrence P. Johnson, M.D.).[3]

2. The administrative law judge did not adopt this portion of the Johnson RFC, but rather found, in relevant part, that the plaintiff was not capable of working "in concentrated exposure to fumes, dust or other respiratory irritants." *See* Statement of Errors at 1-3; Finding 5, Record at 17.

3. That ultimate RFC finding is "essentially the same" as that conveyed by the administrative law judge to the vocational expert at hearing. *See* Statement of Errors at 2; Record at 39 (asking vocational expert to assume, in relevant part, a hypothetical claimant who "would not be able to work at a job that had extremes of heat and humidity" and "would not be able to work around any fumes. That is smoky or vaporous exhalations, usually odorous thrown off as a result of combustion or chemical reaction such as gas and diesel fumes.").

4. In response to the administrative law judge's hypothetical question, the vocational expert testified that such a claimant could perform the job of assembler, sedentary level (485 positions in Maine and 160,000 nationwide) or assembler, light level (1,497 in Maine and 737,000 nationwide). *See* Record at 39-40. However, when the plaintiff's representative asked the vocational expert to assume the RFC environmental limitation found by Dr. Johnson and asked if that would erode the number of assembler jobs available, she testified: "I suppose it could." *Id*. at 41.

---

[3] The form that Dr. Johnson completed provided a choice of four checkboxes with respect to fumes, odors, dusts, gases, poor ventilation, etc.: unlimited, avoid concentrated exposure, avoid even moderate exposure, and avoid all exposure. *See* Record at 173. A second RFC assessment was completed by a layperson "Single Decision Maker," *see id.* at 133-40, and thus cannot stand as substantial evidence of the plaintiff's RFC.

The plaintiff reasons that because (i) the RFC ultimately found by the administrative law judge and conveyed to the vocational expert deviates from the medical evidence of record, and (ii) the hypothetical question containing the Johnson RFC undermined (by some unquantified amount) the number of assembler jobs available, the administrative law judge's Step 5 finding is unsupported by substantial evidence. *See* Statement of Errors at 1-3.

This would be an excellent argument but for one catch: The Record does contain another RFC assessment by a medical expert, Olaf S. Andersen, M.D., who testified at hearing. *See* Record at 33-37, 73. When asked at hearing what the impact of the plaintiff's lung disease was on his exertional abilities, Dr. Andersen testified: "I would think he could do light and certainly sedentary work." *Id.* at 36. When then asked how clean an environment the plaintiff would have to be in "to be comfortable over the long haul[,]" he replied: "Pretty clean. He wouldn't want to be working at a gas station or anything with a lot of fumes around, dust around. That's for sure." *Id*. at 36-37. Dr. Andersen testified that he did not think odors such as mild aftershave or perfume would pose a problem for the plaintiff, but "stronger fumes, absolutely, yes." *Id*. at 37.

At oral argument, counsel for the plaintiff posited, *inter alia*, that Dr. Andersen's testimony actually was more consistent with Dr. Johnson's finding of a need to avoid even moderate exposure to irritants than the administrative law judge's finding of a need to avoid only concentrated exposure. I disagree. Dr. Andersen paints a picture of a person who must avoid strong fumes or "a lot of fumes" or dust – in other words, "concentrated" exposure.

Beyond this, Dr. Andersen's opinion and the administrative law judge's ultimate finding are supported by and largely consistent with the plaintiff's own testimony at hearing, during which he identified the following as bothering his lungs (apart from his continued cigarette smoking): high heat, humidity, heavy automobile or truck fumes, gas or diesel fumes, cooking odors, perfume or scents or a

5

"very dusty" environment. *See id.* at 28-30.[4] While, as counsel for the plaintiff noted at oral argument, his client was speaking to conditions about which he knows (such as fumes encountered in truck driving) and was not in a position to judge how he would be affected by air-quality issues in jobs he has never attempted (such as the assembler job relied upon by the administrative law judge), his testimony nonetheless can be characterized as conveying the sense that heavy fumes, strong odors and large amounts of dust bother him. The administrative law judge's hypothetical question to the vocational expert, in which he posited an inability to work around fumes (smoky or vaporous) or in extremes of heat and humidity, was largely faithful to (if not actually more restrictive than) the prohibitions discussed by Dr. Andersen and the plaintiff.

At oral argument, the plaintiff's counsel made two further observations that merit comment: that (i) the administrative law judge did not himself rely on the testimony of either Dr. Andersen or the plaintiff, and (ii) the etiology of the administrative law judge's ultimate environmental finding is in any event unclear, inasmuch as it does not fully match that of either medical expert, Dr. Andersen or Dr. Johnson.

Unfortunately, the administrative law judge did not take the trouble to explain how he arrived at his ultimate RFC conclusion, merely stating that it was supported by the "evidence." *See id.* at 16. Nonetheless, a failure of articulation – while hardly to be emulated or encouraged – does not constitute reversible error when, as here, the court nonetheless readily can discern substantial support for the administrative law judge's findings in the Record. *See, e.g., Bryant ex rel. Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir. 1998) ("We have often held that [a]n arguable deficiency in opinion-

---

[4] Moreover, as counsel for the commissioner pointed out at oral argument, when the administrative law judge asked the plaintiff why he stopped working as a truck driver on his alleged onset date of disability (January 30, 2003) the plaintiff testified that on that date he lost his means to make a living when he rolled his truck over and lacked insurance to replace it. *See* Record at 23-24. He testified that his lungs were "pretty bad" as well, *id.* at 23, but stated that he actually had been "disabled" by that condition during the period of time he still was working as a truck driver, *see id.* at 24.

6

writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably ha[s] no practical effect on the outcome of the case.") (citations and internal quotation marks omitted).

With respect to the second point, it is true that the administrative law judge did not simply adopt wholesale any one opinion as to the plaintiff's environmental limitations, instead seemingly picking and choosing among different pieces of evidence to craft his ultimate finding. However, in this circuit, such an approach does not in itself constitute error. *See, e.g., Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks – the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case – is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter. Though it is sometimes useful to have such testimony presented, we decline to lay down an ironclad rule that, without it, a judge is powerless to piece together the relevant medical facts from the findings and opinions of multiple physicians.").

In short, inasmuch as (i) the RFC posited to the vocational expert is supported by the evidence, in the form of both the plaintiff's and Dr. Andersen's testimony, and (ii) the plaintiff acknowledges that the RFC ultimately found by the administrative law judge is "essentially the same" as that posited to the vocational expert, *see* Statement of Errors at 2, the Step 5 finding is supported by substantial evidence.

I turn briefly to the plaintiff's secondary argument: His complaint that the administrative law judge unfairly cast doubt on his credibility because of gaps in treatment, including a gap from January 2004 through the date of hearing (May 11, 2004), despite his explanation at hearing that he had lost his Maine Care card three months earlier and was no longer able to pay for medical care. *See* Statement of Errors at 3-4; Record at 15, 31. This point is well-taken insofar as it goes, but it does not go far

enough. The administrative law judge was concerned not only about the gap in treatment from January to May 2004 but also about other gaps in treatment and about objective medical evidence indicating that the plaintiff's condition was not as severe as alleged. *See* Record at 15 ("While pulmonary function tests were indicative of airway disease, a chest x-ray was normal. Furthermore, . . . the claimant's breathing difficulties are quickly alleviated with medication."). There is Record support for these observations. *See, e.g., id*. at 184 (radiology report dated May 6, 2003 stating: "no signs of a mass lesion or of COPD are identified as an explanation for shortness of breath"), 185 (handwritten note dated May 6, 2003 on pulmonary function lab report stating: "Moderate to severe airway obstruction, with significant improvement after albuterol."). The administrative law judge's credibility discussion is sufficiently detailed and supported by the Record to entitle it to deference. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of June, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge